# Supreme Court of Pennsylvania

## Court of Common Pleas
## Civil Cover Sheet

_____ Chester _____ County

| For Prothonotary Use Only: | FILED |
|---|---|
| Docket No: | 10 OCT -4 PM 2: 33 |
| 10-12160 | OFFICE OF THE PROTHONOTARY CHESTER CO. PA. |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**S E C T I O N   A**

**Commencement of Action:**
☒ Complaint  ☐ Writ of Summons  ☐ Petition  ☐ Notice of Appeal
☐ Transfer from Another Jurisdiction  ☐ Declaration of Taking

**Lead Plaintiff's Name:**
AmerisourceBergen Drug Corporation

**Lead Defendant's Name:**
Allscripts, Inc.

☐ Check here if you are a Self-Represented (Pro Se) Litigant

Name of Plaintiff/Appellant's Attorney: Morton Branzburg / Matthew Rosenberg

Are money damages requested? : ☒ Yes  ☐ No

Dollar Amount Requested: _____ within arbitration limits
(Check one) __X__ outside arbitration limits

Is this a *Class Action Suit?*  ☐ Yes  ☒ No

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE**. If you are making more than one type of claim, check the one that you consider most important.

**S E C T I O N   B**

**TORT** *(do not include Mass Tort)*
☐ Intentional
☐ Malicious Prosecution
☐ Motor Vehicle
☐ Nuisance
☐ Premises Liability
☐ Product Liability *(does not include mass tort)*
☐ Slander/Libel/ Defamation
☐ Other:

**MASS TORT**
☐ Asbestos
☐ Tobacco
☐ Toxic Tort - DES
☐ Toxic Tort - Implant
☐ Toxic Waste
☐ Other:

**PROFESSIONAL LIABLITY**
☐ Dental
☐ Legal
☐ Medical
☐ Other Professional:

**CONTRACT** *(do not include Judgments)*
☐ Buyer Plaintiff
☐ Debt Collection: Credit Card
☒ Debt Collection: Other
   Pharmaceutical Sales
☐ Employment Dispute: Discrimination
☐ Employment Dispute: Other
☐ Other:

**REAL PROPERTY**
☐ Ejectment
☐ Eminent Domain/Condemnation
☐ Ground Rent
☐ Landlord/Tenant Dispute
☐ Mortgage Foreclosure
☐ Partition
☐ Quiet Title
☐ Other:

**CIVIL APPEALS**
Administrative Agencies
☐ Board of Assessment
☐ Board of Elections
☐ Dept. of Transportation
☐ Zoning Board
☐ Statutory Appeal: Other

Judicial Appeals
☐ MDJ - Landlord/Tenant
☐ MDJ - Money Judgment
☐ Other:

**MISCELLANEOUS**
☐ Common Law/Statutory Arbitration
☐ Declaratory Judgment
☐ Mandamus
☐ Non-Domestic Relations Restraining Order
☐ Quo Warranto
☐ Replevin
☐ Other:

*Pa.R.C.P. 205.5*

2/2010



# Chester County
# Court of Common Pleas
## Cover Sheet

Docket No.:
FILED
10 OCT -4  PM 2: 33

PROTHONOTARY
CHESTER CO. PA.

**Plaintiff(s): (Name, Address)**

AmerisourceBergen Drug Corporation
1300 Morris Drive
Valley Forge, PA 19087

**Plaintiff's/Appellant's Attorney (circle one):**
(Name, firm, address, telephone and attorney ID#)
Morton R. Branzburg (24477) / Matthew P. Rosenberg (201485)
Klehr | Harrison | Harvey | Branzburg LLP
1835 Market Street, Suite 1400, Philadelphia, PA 19103
215.569.2700

**Defendant(s): (Name, Address)**

Allscripts, LLC, c/o Corporation Service Company
2711 Centerville Road, Suite 400, Wilmington, DE 19808

A-S Medication Solutions, LLC
224 North Park Avenue, Fremont, NE 68025

**Are there any related cases? Please provide case nos.**

Defendants who are proceeding without counsel are strongly urged to file with the Prothonotary a written statement of an
address AND a telephone number at which they can be reached.

If this is an appeal from a Magisterial District Judgment, was appellant ◯ Plaintiff or ◯ Defendant in the original action?

Jury Trial Demanded   ◯ Yes   ● No

Nature of case if not on previous cover sheet – Please choose the most applicable

| | |
|---|---|
| ☐ Annulment | ☐ Writ of Certiorari |
| ☐ Custody · Conciliation Required | ☐ Injunctive Relief |
| ☐ Custody· Foreign Order | ☐ Mechanics Lien Claim |
| ☐ Custody - No Conciliation Required | ☐ Issuance of Foreign Subpoena |
| ☐ Divorce - Ancillary Relief Request | ☐ Name Change |
| ☐ Divorce - No Ancillary Relief Requested | ☐ Petition for Structured Settlement |
| ☐ Foreign Divorce | |
| ☐ Foreign Protection from Abuse | |
| ☐ Paternity | |
| ☐ Protection from Abuse | |
| ☐ Standby Guardianship | |

**Arbitration Cases Only**

Arbitration Date _____
Arbitration Time _____

Defendants are cautioned that the scheduling of an arbitration
date does not alter the duty of the defendant to respond to the
complaint and does not prevent summary disposition from
occurring prior to the arbitration date.
This matter will be heard by a Board of Arbitrators at the time
and date specified but, if one or more of the parties is not
present at the hearing, the matter may be heard at the same
time and date before a judge of the court without the absent
party or parties. There is no right to a trial *de novo* on appeal
from a decision entered by a judge.

**Notice of Trial Listing Date**
Pursuant to C.C.R.C.P. 249.3, if this case is not subject to
compulsory arbitration it will be presumed ready for trial
twelve (12) months from the date of the initiation of the suit
and will be placed on the trial list one (1) year from the date
the suit was filed unless otherwise ordered by the Court.

·To obtain relief from automatic trial listing a party must
proceed pursuant to C.C.R.C.P. 249.3(b), request an
administrative conference and obtain a court order deferring
the placement of the case on the trial list until a later date.

**File with:** Chester County Justice Center, Prothonotary Office, 201 W. Market St., Ste. 1425, PO Box 2746, West Chester, PA 19380-0989

These cover sheets must be served upon all other parties to the action immediately after filing.
Submit enough copies for service.

IN THE COURT OF COMMON PLEAS
OF CHESTER COUNTY

FILED

10 OCT -4  PM 2: 33

OFFICE OF THE
PROTHONOTARY
CHESTER CO. PA.

AMERISOURCEBERGEN DRUG
CORPORATION,
1300 Morris Drive
Valley Forge, PA 19087,

                    Plaintiff,

      v.

ALLSCRIPTS, LLC
c/o Corporation Service Company
2711 Centerville Road, Suite 400
Wilmington, DE 19808,

      and

A-S MEDICATION SOLUTIONS, LLC
224 North Park Avenue
Fremont, NE 68025,

               Defendants.

CIVIL ACTION

No.:

## ENTRY OF APPEARANCE

TO THE PROTHONOTARY:

    Kindly enter the appearances of Morton R. Branzburg and Matthew P. Rosenberg on behalf of the plaintiff in the above-captioned matter.

KLEHR | HARRISON | HARVEY |
BRANZBURG LLP

Dated:  September 20, 2010

By: _____
Morton R. Branzburg (24477)
Matthew P. Rosenberg (201485)
1835 Market Street, Suite 1400
Philadelphia, PA  19103
Phone: 215-569-2700
Facsimile: 215-568-6603
*Attorneys for Plaintiff*

PHIL1 1242459-2

## IN THE COURT OF COMMON PLEAS
## OF CHESTER COUNTY

FILED

10 OCT -4  PM 2: 33

OFFICE OF THE
PROTHONOTARY
CHESTER CO. PA.

AMERISOURCEBERGEN DRUG
CORPORATION,
1300 Morris Drive
Valley Forge, PA 19087,

CIVIL ACTION

Plaintiff,

v.

No.:

ALLSCRIPTS, LLC
c/o Corporation Service Company
2711 Centerville Road, Suite 400
Wilmington, DE 19808,

and

A-S MEDICATION SOLUTIONS, LLC
224 North Park Avenue
Fremont, NE 68025,

Defendants.

## NOTICE TO DEFEND

You have been sued in court.  If you wish to defend against the claims set forth in the following papers, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER, OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW.  THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

PHIL1 1242459-2

LAWYER REFERRAL AND INFORMATION SERVICE
Chester County Bar Association
15 West Gay Street, P.O. Box 3191
West Chester, PA 19381-3191
(610) 429-1500

IN THE COURT OF COMMON PLEAS
OF CHESTER COUNTY

FILED

10 OCT -4  PM 2: 33

OFFICE OF THE
PROTHONOTARY
CHESTER CO. PA.

AMERISOURCEBERGEN DRUG
CORPORATION,
1300 Morris Drive
Valley Forge, PA 19087,

                         Plaintiff,

      v.

ALLSCRIPTS, LLC
c/o Corporation Service Company
2711 Centerville Road, Suite 400
Wilmington, DE 19808,

         and

A-S MEDICATION SOLUTIONS, LLC
224 North Park Avenue
Fremont, NE 68025,

                  Defendants.

CIVIL ACTION

No.:

## COMPLAINT

The plaintiff, AmerisourceBergen Drug Corporation, ("ABDC"), by and through its undersigned counsel, hereby sues the defendants Allscripts, LLC and ("Allscripts") and A-S Medication Solutions, LLC ("A-S"), and as grounds therefor states as follows:

## THE PARTIES

1.      ABDC is a Delaware corporation, with a principal place of business at 1300 Morris Drive, Valley Forge, Pennsylvania 19087.

2.      Allscripts is a Delaware corporation, with a principal place of business at 222 Merchandise Mart Plaza, Suite 2024, Chicago, Illinois 60654.

3.      A-S is a Nebraska corporation with its principal place of business at 224 North Park

Avenue, Fremont, Nebraska 68025.

## BACKGROUND

4.      ABDC is a supplier of medical and pharmaceutical products.

5.      At all times relevant hereto, and as set forth more fully below, Allscripts and A-S were customers of ABDC, purchasing pharmaceuticals on open account and promising to pay the invoice price for those pharmaceuticals.

6.      On or about September 1, 2007, ABDC and Allscripts entered into a Prime Vendor Agreement (the "PVA") whereby Allscripts agreed, among other things, to purchase certain prescription pharmaceuticals from ABDC. A true and correct copy of the PVA is attached hereto as Exhibit A and incorporated herein.

7.      In reliance on the PVA, ABDC shipped pharmaceuticals to Allscripts on credit and invoiced Allscripts for the pharmaceuticals purchased.

8.      Allscripts purchased pharmaceuticals from ABDC under the following nine account numbers: 019-000752, 019-098814, 046-022376, 046-022384, 046-022368, 046-022392, 046-022418, 046-022426, and 046-022434 (the "Allscripts Accounts").

9.      Allscripts used the pharmaceuticals that it purchased from ABDC in its business.

10.     On March 9, 2009, ABDC, Allscripts, and A-S entered into an Assignment Agreement whereby, among other things, Allscripts assigned all of its rights and delegated all of its obligations under the PVA to A-S, and A-S agreed to accept such assignment and delegation. Thus, A-S assumed the obligations for the Allscripts Accounts from Allscripts when it entered into the Assignment Agreement. A true and correct copy of the Assignment Agreement is attached hereto as Exhibit B and incorporated herein.

11.     In reliance on the PVA and Assignment Agreement, ABDC shipped pharmaceuticals

PHIL1 1242459-2                                          2

to A-S on credit and invoiced A-S for the pharmaceuticals purchased

12.     A-S purchased pharmaceuticals from ABDC using at least 10 different account numbers:046-175604, 046-175612, 046-175638, 046-175646, 046-175653, 046-175661, 046-175679, 046-175687, 019-175562, and 019-175570 (the "A-S Accounts").

13.     A-S used the pharmaceuticals that it purchased from ABDC in its business.

14.     Despite demand, Allscripts has failed to make payment for certain pharmaceuticals that it purchased from ABDC directly using the Allscripts Accounts.

15.     Also despite demand, A-S has failed to make payment for purchases of certain pharmaceuticals that A-S made directly from ABDC or that Allscripts made and A-S assumed.

16.     The PVA provides that a late charge of 0.05% per day (18%/360) will be assessed on all delinquent outstanding balances due to ABDC from Allscripts and A-S.

17.     The PVA provides that, upon an event of default thereunder, ABDC is entitled to collect its attorneys' fees and costs of collection until ABDC is paid in full.

18.     Allscripts and A-S are in default of their obligations to ABDC because, inter alia, they have failed to make payments when due pursuant to the terms of the PVA.

19.     As of June 18, 2010, Allscripts was indebted to ABDC under the terms of the PVA in the amount of at $165,272.88 on the Allscripts Accounts, evidenced by the Account Statements attached as Exhibits C through L and incorporated herein.

20.     As a result of the foregoing defaults, the principal amount of at least $165,272.88 is immediately due and payable from Allscripts.

21.     As of June 18, 2010, A-S was indebted to ABDC under the terms of the PVA in the amount of at least $150,126.04 on the A-S Accounts and $165,272.88 on the Allscripts Accounts, evidenced by the Account Statements attached as Exhibits C through U and incorporated herein.

22.     As a result of the foregoing defaults, the principal amount of at least $315,398.92 is immediately due and payable from A-S.

23.     All conditions precedent to ABDC's right to recover the above amounts from Allscripts and A-S have been performed or have occurred.

## COUNT I
## BREACH OF CONTRACT
## ABDC v. ALLSCRIPTS

24.     ABDC incorporates herein by this reference the allegations set forth in the foregoing paragraphs of this Complaint, as though they were set forth fully and at length.

25.     ABDC has complied with its contractual obligations by supplying pharmaceuticals to Allscripts and invoicing Allscripts for payment.

26.     Despite the fact that ABDC sent invoices to Allscripts and demanded payment for the pharmaceuticals supplied, Allscripts failed and refused, and continues to fail and refuse, to make payment to ABDC in accordance with its obligations under the PVA or otherwise.

27.     As a result of this material breach of contract by Allscripts, ABDC has been damaged in an amount in excess of $165,272.88.

WHEREFORE, plaintiff, AmerisourceBergen Drug Corporation, demands judgment against A-S Pharmacy, Inc. in the amount of $165,272.88, attorneys' fees and costs, interest on each outstanding invoice until paid in full, other charges authorized by the Credit Agreement, and such other and further relief as is just and proper.

## COUNT II
## BREACH OF ACCOUNT STATED
## ABDC v. ALLSCRIPTS

28.     ABDC incorporates herein by this reference the allegations set forth in the foregoing paragraphs of this Complaint, as though they were set forth fully and at length.

4

29.    Beginning in or about September 1, 2007, ABDC had an ongoing business relationship with Allscripts pursuant to which ABDC sold pharmaceuticals to Allscripts, and Allscripts was to pay for such pharmaceuticals in accordance with the terms of the various statements of account and invoices sent from ABDC to Allscripts.

30.    ABDC invoiced Allscripts in a timely fashion for the pharmaceuticals detailed above, which pharmaceuticals were shipped to Allscripts at Allscripts's request.

31.    Allscripts had an opportunity to review the relevant invoices and raise any objections regarding the accuracy of the information contained therein including, among other things, the amount stated as due.

32.    Allscripts has never objected to the amounts set forth in ABDC's invoices.

33.    Despite repeated demand, Allscripts has failed to pay ABDC the total amounts due as invoiced.  A balance remains due.

34.    As a direct and proximate result of Allscripts's failure to pay its accounts as stated, ABDC has been damaged in an amount in excess of $165,272.88.

WHEREFORE, plaintiff, AmerisourceBergen Drug Corporation, demands judgment against A-S Pharmacy, Inc. in the amount of $165,272.88, attorneys' fees and costs, interest on each outstanding invoice until paid in full, other charges authorized by the Credit Agreement, and such other and further relief as is just and proper.

### COUNT III
### UNJUST ENRICHMENT
### ABDC v. ALLSCRIPTS
### (Pled in the alternative)

35.    ABDC incorporates herein by this reference the allegations set forth in the foregoing paragraphs of this Complaint, as though they were set forth fully and at length.

36.     ABDC conferred a benefit upon Allscripts, to which Allscripts was not entitled, by providing Allscripts with pharmaceuticals, which pharmaceuticals Allscripts sold as part of its business, generating revenues therefrom.

37.     Despite repeated demand, Allscripts has refused to pay for the pharmaceuticals.

38.     By accepting delivery of pharmaceuticals supplied by ABDC, retaining them, and not paying ABDC for them, Allscripts has been unjustly enriched at ABDC's expense, in an amount in excess of $165,272.88, thereby damaging ABDC.

WHEREFORE, plaintiff, AmerisourceBergen Drug Corporation, demands judgment against A-S Medication Solutions, LLC in the amount of $165,272.88 and such other and further relief as is just and proper.

## COUNT IV
## BREACH OF CONTRACT
## ABDC v. A-S

39.     ABDC incorporates herein by this reference the allegations set forth in the foregoing paragraphs of this Complaint, as though they were set forth fully and at length.

40.     ABDC has complied with its contractual obligations by supplying pharmaceuticals to A-S and invoicing A-S for payment.

41.     Despite the fact that ABDC sent invoices to A-S and demanded payment for the pharmaceuticals supplied, A-S failed and refused, and continues to fail and refuse, to make payment to ABDC in accordance with its obligations under the PVA or otherwise.

42.     As a result of this material breach of contract by A-S, ABDC has been damaged in an amount in excess of $315,398.92.

WHEREFORE, plaintiff, AmerisourceBergen Drug Corporation, demands judgment against A-S Pharmacy, Inc. in the amount of $315,398.92, attorneys' fees and costs, interest on each

PHIL1 1242459-2

outstanding invoice until paid in full, other charges authorized by the Credit Agreement, and such other and further relief as is just and proper.

## COUNT V
## BREACH OF ACCOUNT STATED
### ABDC v. A-S

43.     ABDC incorporates herein by this reference the allegations set forth in the foregoing paragraphs of this Complaint, as though they were set forth fully and at length.

44.     Beginning in or about March, 9, 2009, ABDC had an ongoing business relationship with A-S pursuant to which ABDC sold pharmaceuticals to A-S, and A-S was to pay for such pharmaceuticals in accordance with the terms of the various statements of account and invoices sent from ABDC to A-S.

45.     ABDC invoiced A-S in a timely fashion for the pharmaceuticals detailed above, which pharmaceuticals were shipped to A-S at A-S's request.

46.     A-S had an opportunity to review the relevant invoices and raise any objections regarding the accuracy of the information contained therein including, among other things, the amount stated as due.

47.     A-S has never objected to the amounts set forth in ABDC's invoices.

48.     Despite repeated demand, A-S has failed to pay ABDC the total amounts due as invoiced. A balance remains due.

49.     As a direct and proximate result of A-S's failure to pay its accounts as stated, ABDC has been damaged in an amount in excess of $150,126.04.

WHEREFORE, plaintiff, AmerisourceBergen Drug Corporation, demands judgment against A-S Pharmacy, Inc. in the amount of $150,126.04, attorneys' fees and costs, interest on each outstanding invoice until paid in full, other charges authorized by the Credit Agreement, and such

PHIL1 1242459-2

other and further relief as is just and proper.

## COUNT VI
### UNJUST ENRICHMENT
### ABDC v. A-S
### (Pled in the alternative)

50.     ABDC incorporates herein by this reference the allegations set forth in the foregoing paragraphs of this Complaint, as though they were set forth fully and at length.

51.     ABDC conferred a benefit upon A-S, to which A-S was not entitled, by providing A-S with pharmaceuticals, which pharmaceuticals A-S sold as part of its business, generating revenues therefrom.

52.     Despite repeated demand, A-S has refused to pay for the pharmaceuticals.

53.     By accepting delivery of pharmaceuticals supplied by ABDC, retaining them, and not paying ABDC for them, A-S has been unjustly enriched at ABDC's expense, in an amount in excess of $150,126.04, thereby damaging ABDC.

WHEREFORE, plaintiff, AmerisourceBergen Drug Corporation, demands judgment against A-S Medication Solutions, LLC in the amount of $150,126.04 and such other and further relief as is just and proper.

KLEHR | HARRISON | HARVEY | BRANZBURG LLP

Dated: September 20, 2010

By: _____

Morton R. Branzburg (24477)
Matthew P. Rosenberg (201485)
1835 Market Street, Suite 1400
Philadelphia, PA 19103
Phone: 215-569-2700
Facsimile: 215-568-6603
*Attorneys for Plaintiff*

*AllSCRIPTS
A-S MED*

## VERIFICATION

I, Yolanda Otero-Justiniano, state that I am Accounts Receivable Compliance Coordinator for AmerisourceBergen Drug Corporation, the plaintiff in this action, that I am authorized to make this verification on its behalf, and, further, that the statements contained within the foregoing document are true and correct to the best of my knowledge, information and belief. I understand that these statements are subject to the penalties set forth in 18 P.S. § 4904 for unsworn falsifications made to authorities.

Yolanda Otero-Justiniano

PHIL1 1242459-2

EXHIBIT "A"

### PRIME VENDOR AGREEMENT

This Prime Vendor Agreement ("Agreement") is made as of September 1, 2007 ("Effective Date") by AmerisourceBergen Drug Corporation, a Delaware corporation ("ABDC"), and Allscripts, LLC, a Delaware limited liability company ("Customer").

    A.    ABDC is a national distributor of pharmaceutical and other products, including prescription ("Rx") and over-the-counter ("OTC") pharmaceuticals, nutritional, health and beauty care ("HBC") and home health care ("DME") products ("Product" or "Products"), and services ("Services");

    B.    Customer owns and operates one or more facilities ("Facilities"); and

    C.    The parties intend by this Agreement to set forth their obligations to each other for an arrangement under which ABDC will provide Products and Services to Customer ("Program").

NOW THEREFORE, the parties agree as follows:

**1.    PRICING AND PAYMENT TERMS**

ABDC will be the Primary Vendor of all requirements of Customer's Facilities for Products. Customer will pay, within terms, Product costs and Program fees pursuant to payment terms in Exhibit "1" ("Pricing/Payment Terms"). "Primary Vendor" means Customer purchases from ABDC no less than 95% of all prescription pharmaceutical Products it purchases through a wholesaler, as verified from time to time by ABDC, and meets minimum periodic purchase levels in Paragraph 3(A) of the Pricing/Payment Terms; provided, however, any Product that is not available from the primary ABDC distribution center (currently Orlando) will not count against such requirement. Orders for Products will be electronically transmitted (including Schedule II controlled substances when allowed) and will describe Products that ABDC will provide to Customer, the quantity and designated delivery location. All payment plans (except pre-pay) must be by electronic funds transfer (EFT).

**2.    PRO GENERICS PROGRAM PARTICIPATION**

Customer must elect to participate in ABDC's preferred generic formulary program ("Preferred Rx Options" or "PRxO Generics") pursuant to requirements as set forth in Paragraph 1(D) of the Pricing/Payment Terms. Customer authorizes ABDC as its agent to develop and implement a generic pharmaceutical Product list for the Term. ABDC represents and warrants that overall pricing PRxO Generics program will be competitive as to both price and quality. Customer will purchase from ABDC each calendar quarter no less than the minimum Net Purchase volume of generic pharmaceutical Products as set forth in the Pricing/Payment Terms, provided that Product is available from ABDC and is substantially competitively priced.

**3.    CUSTOMER LOCATIONS & DELIVERIES**

ABDC will deliver Products to each Facility as agreed upon by the parties except holidays and warehouse physical inventory days. Customer may be charged for emergency orders. Facility means each of Customer's, together with any other facilities Customer acquires, is affiliated with or operates during the Term in the United States. Newly acquired facilities with existing agreements with other distributors will become Facilities under this Agreement upon the earlier of expiration of such existing agreement or the date Customer may terminate such agreement, with or without cause, without breaching it or paying a material termination penalty; provided, however, service to Facilities outside ABDC's normal service area (which does not include Alaska, Hawaii or U.S. territories) may be subject to a delivery surcharge.

4.      RETURNED GOODS POLICY

    A.      General. Subject to Section 4(B), Customer will only return Products to ABDC in accordance with ABDC's standard policy for returned Products ("Returned Goods Policy"), as amended from time to time by ABDC. If Customer returns more than 3% of its OTC Net Purchases, or 3% of its pharmaceutical Net Purchases in any month, Customer may be assessed an additional restocking fee over and above any standard stocking fee in the Returned Goods Policy. Customer will return only Product purchased from ABDC for which Customer has submitted the invoice number and date of purchase. ABDC may reject returns not accompanied by the invoice number and date of purchase or that exceed in amount either the 3% return limit or the amount on the referenced invoice number. ABDC reserves the right to refuse all future returns from Customer in the event that Customer submits any counterfeit Product for return.

    B.      Orlando, FL Division Returns Policy. Customer will only return Products to ABDC's Orlando, Florida distribution center in accordance with the policies and procedures set forth in Exhibit "4" and as amended from time to time by ABDC.

5.      FILL RATES.

    A.      ABDC commits to a ninety-seven and five-tenths percent (97.5%) adjusted fill rate on a chain-wide basis measured monthly. The adjusted fill rates are calculated as follows:

    (a)      An item shorted on an original order will not be counted as a short for the second time until 72 hours have passed.

    (b)      Where only a partial quantity is received of an individual line item, it will be a short only if fifty percent (50%) or less of the quantity ordered is shipped.

    (c)      On any new item, or an item previously not ordered by Customer, a period of thirty (30) days will be given to add the item to ABDC's inventory. This period is computed from the date Customer places the original order and provides estimates on usage.

    (d)      The quantity of an item ordered in a week by a facility is in excess of one hundred twenty percent (120%) of Customer's average weekly volume during the preceding month for such item will not be considered short.

    (e)      Manufacturer's legitimate back orders, unavailability and other shortages are not computed in determining the service level.

    B.      In the event ABDC does not meet the 97.5% fill rate as measured over a month, ABDC shall pay Customer an amount equal to 0.02% of Customer's average monthly purchases as measured over the life of the Agreement to date as liquidated damages, and not as a penalty. This payment shall be Customer's sole remedy for any failure to meet the fill rate.

6.      ACCOUNT SPECIALIST

    Customer will be serviced by an assigned account specialist on a schedule agreed to by Customer's management and ABDC. In addition to performing periodic business reviews, as part of ABDC's strategic account management approach to Customer's business, a variety of resources will be allocated to identify, assess, evaluate and develop mutually beneficial business opportunities and opportunities to reduce costs, improve efficiencies and maximize profitability for both companies and their respective customers. An additional dedicated key accounts liaison associate will be provided

by the servicing ABDC distribution center to facilitate the specific contract and procurement needs of Customer.

7.    ADDITIONAL SERVICES & PROVISIONS.

Services are listed in Exhibit "2". Terms, conditions and other provisions are set forth in Exhibit "3" ("Provisions"). ABDC may, from time to time, develop policies and procedures relative to new or existing Services offered to customers, on an interim or as-needed basis. If ABDC develops such policies or procedures or changes current ones, ABDC will notify Customer in writing at least thirty (30) days before such changes are effective.

8.    TERM OF AGREEMENT

Subject to Paragraph 5 of the Provisions, the Term will be from the Effective Date until August 31, 2010. The Term will, thereafter, be extended on a month-to-month basis until either party gives at least ninety (90) days prior written notice to the other of its intention not to extend this Agreement.

9.    RECORDS

To the extent required by 42 U.S.C. §1395x(v)(1), until four (4) years after termination of this Agreement, ABDC will make available upon written request to the Secretary of the U.S. Department of Health & Human Services ("HHS"), the Comptroller General, or their authorized representatives, a copy of this Agreement and all records required to certify the nature and extent of costs of Products and Services provided by ABDC under this Agreement. ABDC will ensure, to the extent it carries out its duties through a subcontract with a value or cost of $10,000 or more in a twelve (12) month period with a related organization, such subcontract will contain similar provisions. Notwithstanding the foregoing, ABDC will have no obligation to make public documents subject to attorney-client privilege.

10.    NOTICES

Notices must be in writing and sent certified mail, prepaid, return receipt requested, or sent by facsimile to the address or facsimile number below. Parties may change this information by written notice to the other party. Pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227, Customer consents to receiving notices, including product updates, recalls, new product launches and programs, advertisements and other marketing materials by telephone facsimile ("fax") machine from ABDC, its affiliates and their related companies, to the fax number set forth below.

To Customer:    Allscripts, LLC, a Delaware limited liability company
2401 Commerce Drive
Libertyville, IL 60048-4464
Attn: President
Fax: 847-680-3951

To ABDC:    AmerisourceBergen Drug Corporation
1300 Morris Drive
Chesterbrook, PA 19087-5594
Attn: Vice President, Alternate Care
Fax: 610-727-3601

with a copy to:       AmerisourceBergen Corporation
                      1300 Morris Drive
                      Chesterbrook, Pennsylvania 19087-5594
                      Attn: General Counsel
                      Fax: (610) 727-3612

11.   **EXHIBITS**

The following exhibits to this Agreement are incorporated by this reference.

| | |
|---|---|
| 1 | Pricing/Payment Terms |
| 2 | Value-Added Services |
| 3 | Provisions |
| 4 | Orlando Division Returns Policies and Procedures |

IN WITNESS WHEREOF, the parties have had a duly authorized officer, partner or principal execute this Prime Vendor Agreement as of the Effective Date.

**CUSTOMER:**
Allscripts, LLC, a Delaware limited liability company

By: _____
Name: _____
Title: _____

**ABDC:**
AmerisourceBergen Drug Corporation

By: _____
Name: _____
Title: _____

EXHIBIT 1 TO
PRIME VENDOR AGREEMENT
PRICING / PAYMENT TERMS

In addition to payment for Products, Customer will pay ABDC the following Program and other fees for ABDC's Product distribution and Services for Customer and its Facilities. Pricing does not reflect any administrative or other fee to a group purchasing organization or buying group ("GPO"). If Customer contracts with a GPO, Customer will pay any such fees to the applicable GPO. In any event, ABDC shall not pay a GPO fee unless and until a group designation form signed by Customer is filed with ABDC. Customer will pay any increase in GPO administrative fees during the Term.

1.    PROGRAM FEES

A.    Price of Goods. Customer will pay the following Price of Goods based upon the definition of "Cost" below, subject to the following adjustments for number of deliveries as shown, for Products other than Products and Services designated as ABDC Special Price Products. ABDC will add to the billed amount any applicable sales, use, business and occupation, gross receipts or other tax.

| Allscripts, LLC | Monthly Volume | Rx Brand Price of Goods | OTC Cost of Goods |
|---|---|---|---|
| 1 Location, Monday – Friday Delivery | $2,300,000 – $3,499,999 | ███████████ | N/A |
| *Delivery cost paid by Customer | $3,500,000 – $4,999,999 | ███████████ | |
| | $5,000,000 and above | ███████████ | |

| Allscripts, LLC OTC Account | Aggregate Monthly Volume | Rx Brand Price of Goods | OTC Cost of Goods |
|---|---|---|---|
| 5 Deliveries per week each site | $15,000 and ABOVE | N/A | ███████████ |
| *Delivery cost included in POG's | | | |

"Cost" with respect to any Product means the lower of (i) the price of the Product on a supplier's price list on the date the Product is allocated to Customer or (ii) any applicable Customer/GPO contract price for the Product authorized by a supplier and maintained in an ABDC bid file, in each case exclusive of discounts for prompt payment given to ABDC by its manufacturers. Cost outside the continental U.S. may be higher than manufacturer's/supplier's normal price list.

Selected Products ("ABDC Special Price Products") including but not limited to drop shipments, food, gift items, home healthcare (DME), items deemed operationally difficult to manage (refrigerated, schedules, etc.), items purchased from suppliers not offering cash discounts of 2% or better, deliveries FOB destination or other standard terms, generics, nutritionals, private label, school and office items, slow-moving items, supplies (bottles & vials)) and Services will not be billed based upon ABDC's Cost (as defined above), but will instead be billed in accordance with the terms and conditions established by ABDC from time to time for such Products and Services. Purchases of ABDC Special Price Products count toward total Monthly Net Purchase volume.

B.    Volume Rebate. At the beginning of each contract year, Customer shall receive a discount of ████ off the first ████████ of Net Purchases purchased in the first month of the contract year, payable in the form of a rebate of ████████ payable in the second month of the contract year. "Net Purchases" shall mean purchases less returns. Customer must be compliant with all terms of this Agreement to be eligible for any rebate under this paragraph.

C.    Monthly Rebate. Customer shall be paid monthly rebate in addition to any other rebates contemplated under this Agreement equal to ████████████████████ of Customer's Price of Goods for its Net Purchases of non-ABDC Special Price Products in each month of this Agreement. On the 10th day of

5

CONFIDENTIAL
Customer will delete this Exhibit "1" (or request confidential treatment)
if it discloses this Agreement for any reason, including in any SEC filing.

each month, ABDC will provide Customer with a detailed report of the previous month's gross purchases and any deductions, including, but not limited to, products purchased under the ABDC Special Price Products programs. "Net Purchases" shall mean purchases less returns. ABDC will issue any check to Customer within fifteen (15) days of the end of each calendar month. Customer must be compliant with all terms of this Agreement to be eligible for any rebate under this paragraph.

D. PRxO Generics Rebates. If Customer continues to use ABDC as its Primary Vendor and otherwise complies with ABDC's PRxO Generics requirements as modified herein, ABDC will issue a rebate to Customer equal to a percentage of Customer's Net Purchases of PRxO Generics during the preceding calendar month, as set forth below, if Customer's PRxO Generics purchases meet or exceed the volumes set forth below.

| PRxO Generics Monthly Volume | PRxO Generics Purchase Rebate |
|---|---|
| $90,000 - $119,999 | |
| $120,000 - $149,999 | |
| $150,000 and above | |

Purchase rebates are not cumulative; only one level will be paid each month. Calculations are monthly, with no carryover from one month to the next. Customer's PRxO Generics purchases will be invoiced at ABDC Special Price Product price. Pending rebates will be noted in Customer's invoices and statements. Customer agrees to indemnify ABDC for any inappropriate use of such invoices. ABDC will issue any check to Customer within fifteen (15) days of the end of each calendar month. Customer must be compliant with payment terms to be eligible for any rebate under this paragraph.

E. Additional Value-Added Services. The additional value-added Services in Exhibit "2" will be provided to Customer by ABDC for $0.00 per month per Facility for Facilities that meet minimum Net Purchase levels.

F. Ordering Hardware/Software. In addition to the foregoing value-added Services fee, Customer will pay the per-month fees in Exhibit "2" for ordering and reporting software and hardware selected by Customer for each installation on system hardware at Customer's Facilities and other locations.

G. Contract Administration. In administering Customer's GPO/supplier contracts, Customer must (i) provide a copy of new contracts, (ii) comply with supplier's terms, (iii) use all products for its "own use" (as defined in judicial and legislative interpretations), (iv) notify ABDC at least forty-five (45) days before it changes suppliers, and (v) upon changing suppliers, assist ABDC in disposing of any excess inventory acquired for Customer. Additionally, Customer will notify ABDC before discontinuing purchases of any special inventory that it has requested ABDC stock (whether or not pursuant to a contract) and assist ABDC in disposing of any excess of such inventory. When invoiced, Customer will promptly reimburse ABDC for any unpaid chargebacks that are (x) denied by a GPO or manufacturer/supplier or (y) not paid within sixty (60) days and, in either case, Customer will look solely to such GPO or manufacturer/supplier for redress. ABDC will make reasonable efforts to cooperate with Customer's efforts to recover amounts from the GPO or manufacturer/supplier.

Contract implementation or changes shall be input into Customer's contract file by ABDC contract department within three (3) business days from receipt of manufacturer/supplier contract load information (including confirmation by the manufacturer of Customer's eligibility) and accuracy confirmation from Customer.

2. PAYMENT TERMS

A. Options. Customer agrees to the following payment terms for Product purchases. (Check only one box below):

28 Day Weekly Pay
☒ Payment for invoices for purchases made Saturday through Friday must be received the Friday following twenty-eight days from statement date by EFT.

B. Terms. All payments must be received for deposit to ABDC's account by the due date by EFT. ABDC may change available payment plans from time to time. Payment term changes may affect Price of Goods. If Customer does not select an option or the option selected is not available, ABDC will bill Customer on Semi-Monthly terms until otherwise notified by Customer. Subject to credit approval, Customer may change

6

CONFIDENTIAL
*Customer will delete this Exhibit "1" (or request confidential treatment)
if it discloses this Agreement for any reason, including in any SEC filing.

payment terms upon thirty (30) days written notice prior to the beginning of a calendar month. Price of Goods adjustments for different payment terms are subject to change from time to time by ABDC to reflect ABDC's cost of money and any resulting credit risk.

3.    MINIMUM ORDER VOLUME

A.    Annual Purchases.  Customer's minimum annual Net Purchase (total purchases less returns, credits, rebates, late payment fees and similar items) volume during Year 1 is ▓▓▓▓▓▓▓▓ Year 1 is from the Effective Date to August 31, 208. Subsequent contract years are the following twelve (12) month periods. Customer's Net Purchases during subsequent years are projected to increase at a rate of 5.00% per year during each year of the Term. Customer's aggregate Net Purchase volume over the life of this Agreement will be no less than ▓▓▓▓▓▓▓▓ Additionally, total annual PRxO Generics Net Purchases from all Facilities will be in the amount of no less than ▓▓▓▓▓▓▓ per annual period.  If Customer fails to meet this ▓▓▓▓▓▓▓ requirement, in addition to any other remedies, ABDC will make reasonable pro-rata adjustments to the Price of Goods on all Products on 30 days notice to Customer to reflect lower than expected PRxO Generics Net Purchase volume.  Such adjustments will be consistent with this Agreement. Calculations are annually, with no carryover from one annual period to the next.

B.    Price of Goods Adjustments.  Customer acknowledges that Price of Goods and Program fees available under this Agreement are based upon Customer's meeting such minimum annual, aggregate and PRxO Generics and other Net Purchases and, if Customer fails to do so, in addition to any other remedies, ABDC may reasonably adjust Price of Goods and Program fees on 90 days notice to reflect lower than expected Net Purchase volume, and if such adjustment represents a material change, as determined by Customer, then Customer may terminate this Agreement immediately upon written notice to ABDC.

CONFIDENTIAL
Customer will delete this Exhibit "1" (or request confidential treatment) if it discloses this Agreement for any reason, including in any SEC filing.

EXHIBIT 2 TO
PRIME VENDOR AGREEMENT
ADDITIONAL VALUE-ADDED SERVICES

The following Services are offered to Customer by ABDC for the monthly fees in Paragraph 1(E) of Pricing/Payment Terms.

- Bar-Coded Shelf Labels
- DEA Scheduled Pharmaceuticals Purchased Report
- Monthly Usage and 80/20 Report
- Price stickers – Rx and OTC

ABDC may discontinue any Services as it deems appropriate, in which case ABDC will make a reasonable proportionate reduction in the monthly fee based upon the value of the discontinued Services. In addition, from time to time ABDC may offer such new Services, at such additional fees as it determines.

Ordering & Reporting Software and Hardware

- Custom Reporting software for no additional fee.
- Internet ordering software (Catalog and Order Entry (COE), *iECHO* or similar software, as appropriate) for no additional fee.
- IScan hardware technology for no additional charge per unit and iScan software and maintenance for $47.50 per month per installation.
- UltraPhase/Telxon handheld electronic order entry terminal (one per pharmacy) for no additional charge per unit and iScan software and maintenance for $47.50 per month per installation per month per installation.
- Ordering hardware will be included for Customer at a cost of $0.00 per month per Installation. Any such hardware may be used solely with ABDC's ordering and reporting software. Customer is responsible for hardware maintenance and repair.

ABDC retains title to all ordering and reporting hardware and software and, pursuant to Provisions Paragraph 5.3, Customer must return them upon termination of this Agreement.

Computer consulting and related services will be offered at ABDC's then-current standard charges for such services.

Recalls

ABDC will notify Customer of all recalls as instructed in the supplier's notification.

Drop Ship Service

ABDC provides drop ship service when Customer's needs dictate this approach and the supplier meets ABDC's liability insurance and other requirements. Drop shipments may be subject to an additional charge.

Flu Vaccine Distribution

ABDC will use commercially reasonable efforts to provide an annual flu allocation for Customer of up to 35,000 vials and up to 10,000 boxes of syringes at ABDC Special Price Product pricing. Customer will have sole discretion to decide its yearly purchase quantity of vials and syringes

and, to the extent ABDC is able to provide such quantity, Customer will purchase such Products within ten (10) days of their availability.

Pedigree Services

If Customer plans to resell Product, Customer may choose to receive pedigree service under the following terms and conditions:

Please choose one of the following options to receive pedigree services:

☒ Retrieve PDF Version of Pedigree via ABC Portal

☒ Electronic Pedigree File That Complies With the 04182006 EPC Global Standard

Customer will be responsible for paying all shipments expenses going outside the state of Florida.

Customer understands any damage to product during shipment is to be handled through Customer's carrier. It is the Customer's responsibility to provide adequate insurance on their deliveries.

Customer understands that returns are allowed within seven (7) days of the sale. If ABDC makes a mistake in order fulfillment, then ABDC will pay freight for the return and for the shipment that will correct the mistake. Otherwise, Customer must pay freight for the return.

Customer will pay a monthly pedigree service fee of $5,000 for the first ship to location that ABC is asked to ship to. An additional $1,000 per month will be charged for each additional facility that ABC is asked to ship to. AmerisourceBergen reserves the right to increase monthly fees with 60 days notice if the overall distributor customer Rx volume significantly increases over time.

Customer will be billed on the first day of the month. Payment will due under the payment terms in this Agreement.

ABDC will give Customer 120 days notice before terminating ABDC's pedigree service program.

EXHIBIT 3 TO
PRIME VENDOR AGREEMENT
PROVISIONS

**1. DUTIES OF ABDC**

1.1     Orders. Orders may be subject to minimum order size requirements. Other than supplier back-ordered Products, ABDC will make reasonable efforts to deliver orders placed by ABDC's normal order cut-off time by the next delivery day. Hawaii, Alaska, U.S. territories and foreign deliveries may be subject to a delivery surcharge.

1.2     Emergency Orders. ABDC will use commercially reasonable efforts to meet a requested delivery time for emergency orders, which may be subject to an additional charge. If ABDC cannot do so, Customer may fill emergency orders outside the Program on such occasions using another provider notwithstanding minimum purchase commitments in this Agreement.

1.3     Records, Audits. ABDC will maintain records of transactions during the Term and for one year after. Customer's employees may audit such records only pursuant to ABDC's audit policies, as modified from time to time. Such audits may be conducted only during ordinary business hours and upon reasonable notice and may only cover ninety (90) days prior to the request or any shorter period set by the manufacturer for chargeback audits. No audit may cover any period previously audited. All costs will be borne by Customer, including costs to produce records. If an audit shows net overcharges or undercharges and ABDC agrees with such findings, ABDC will credit or charge Customer within thirty (30) days of receipt of written notice of the net overcharge (or, if later, within thirty (30) days of receiving an applicable supplier's credit) or undercharge.

**2. DUTIES OF CUSTOMER**

2.1     Primary Vendor Orders. For Products required by Facilities, Customer will submit an electronic order for all Products. If allowed, non-electronic orders may be submitted.

2.2     Disclosure. Customer will comply with all laws, including reporting or reflecting discounts, rebates and other price reductions pursuant to 42 U.S.C. §1320a-7b(b)(3)(A) on cost reports or claims submitted to federal or state healthcare programs, retaining invoices and related pricing documentation and making them available on request to healthcare program representatives.

2.3     Notice of Changes. Customer will promptly notify ABDC of changes in ownership, name, business form (e.g., sole proprietorship, partnership or corporation) or state of incorporation or formation, or any intent to sell, close, move or modify its operations.

2.4     No Set-Off. Customer's obligation to pay for Products will be absolute, unconditional and not subject to reduction, set-off, counterclaim or delay.

2.5     Billing Statements. Billing disputes must be brought to the attention of ABDC's accounts receivable department within twelve (12) months after receipt of the first statement containing the amount in dispute or Customer will be deemed to accept the accuracy of such statements and to waive its right to dispute the amount.

2.6     Late Payment. All payments must be received in ABDC's account during normal business hours on the date due. Drivers and other ABDC employees cannot accept cash. Price of Goods reflects a prompt payment discount. If payment is not received by the due date, ABDC will invoice Customer such unearned discount by recalculating Price of Goods based on Cost + 2% (or, if greater, 2% more than the invoiced Price of Goods) effective as of the due date. Thereafter, if payment is delinquent, ABDC may withhold any payments to Customer and will assess a per-day late payment fee of the lower of 0.05% (18%/360) or the

maximum rate permitted by law on the outstanding balance until paid, beginning on the first (1st) business day after such due date. Additionally, ABDC may adjust future Price of Goods to reflect Customer's payment history. Such rights are in addition to ABDC's other remedies and will not relieve Customer of its obligation to make prompt payment in accordance with this Agreement.

2.7     Title And Risk Of Loss. All goods are F.O.B. Customer's location, with freight prepaid for normal delivery. Expedited delivery is extra. Title and risk of loss pass upon delivery to Customer.

2.8     Extension Of Credit. Payment terms are an extension of credit based upon an evaluation of Customer's financial condition upon commencement of this Agreement as reflected in written information from Customer. Customer will abide by ABDC's standard credit terms as amended from time to time by ABDC. Customer will promptly notify ABDC in writing of any claim that, with an unfavorable result, would have a material adverse effect on Customer's financial condition or operation. Upon request, Customer will furnish ABDC complete annual and quarterly financial statements and other evidence of its financial condition necessary to establish, in ABDC's opinion, Customer's ability to perform its obligations. If ABDC reasonably believes Customer's ability to make payments is impaired or its financial condition has materially deteriorated, ABDC may from time to time amend Customer's payment terms, require past due amounts to be paid and/or require posting of adequate security or such other documents as ABDC may require. Pending receipt of requested items, ABDC may withhold delivery of Products and providing Services; place Customer on a C.O.D. basis if ABDC has not received payment when due after giving notice by 10:00 a.m. and giving Customer until 2:00 p.m. the same day for ABDC to receive payment; and/or require Customer to pay part or all of any past due amount as a condition to continued service.

**3. NO WARRANTIES**

Customer acknowledges that ABDC is not the manufacturer of any Products and ABDC DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING THOSE OF MERCHANTABILITY, NON-INFRINGEMENT AND FITNESS FOR A PARTICULAR PURPOSE, FOR PRODUCTS AND SERVICES. No oral or written information provided by ABDC, its employees or other representatives will create any such warranty. In no event will ABDC be liable for any special, incidental or consequential damages in connection with or related to Products, hardware, Software, including ordering software, or Services.

**4. CONFIDENTIALITY**

Each party and its employees or representatives ("Receiving Party") will protect as proprietary and confidential information ("Confidential Information") disclosed by the other ("Disclosing Party") and not use or disclose it except in connection with the Program or as otherwise agreed. Confidential Information does not include information (i) available on a non-confidential basis, (ii) known or able to be formulated by Receiving Party, or (iii) required to be disclosed by law. Pricing and payment terms are confidential and may not be shared with any third party. Customer will remove Exhibit "1" (or request confidential treatment) if it discloses this Agreement for any reason, including in a Securities and Exchange Commission filing.

**5. TERMINATION OF AGREEMENT**

5.1     Default. In addition to other available remedies, either party may immediately terminate this Agreement for

cause upon written notice to the other party upon the other party's:

(a)  (i) filing an application for or consenting to appointment of a trustee, receiver or custodian of its assets; (ii) having an order for relief entered in Bankruptcy Code proceedings; (iii) making a general assignment for the benefit of creditors; (iv) having a trustee, receiver or custodian of its assets appointed unless proceedings and the person appointed are dismissed within thirty (30) days; (v) insolvency within the meaning of Uniform Commercial Code Section 1-201 or failing generally to pay its debts as they become due within the meaning of Bankruptcy Code Title 11, Section 303(h)(1) (11 U.S.C. §303(h)(1)), as amended; or (vi) certification in writing of its inability to pay its debts as they become due (and either party may periodically require the other to certify its ability to pay its debts as they become due) (collectively, "Bankruptcy");

(b)  The sale or transfer of the business of Customer, in whole or in part, or a "Change in Control" in Customer. As used herein, "Change in Control" means (if applicable) the sale, transfer or assignment of all or substantially all of the assets of the Customer or of 25% or more of the voting equity in Customer or a change in the power to vote 25% or more of the voting interest in Customer;

(c)  Failure to pay any amount due and such failure continues five (5) days after written notice;

(d)  Failure to perform any other material obligation of this Agreement or any other agreement now or hereafter entered into between the parties and such failure continues for thirty (30) days after it receives notice of such breach from the non-breaching party; provided, however, if the other party has commenced to cure such breach within such thirty (30) days, but such cure is not completed within such thirty (30) days, it will have a reasonable time to complete its cure if it diligently pursues the cure until completion; and further provided that if such breach occurs more than three times during any twelve (12) month period, the non-breaching party may terminate this Agreement upon thirty (30) day written notice. "For cause" does not include Customer's receiving a more favorable offer from an ABDC competitor.

5.2   Survival Upon Termination. Within five (5) days of expiration or earlier termination of this Agreement for any reason, all amounts owed by Customer will be immediately due and payable, Customer will (i) pay ABDC any amount owed and (ii) return to ABDC all hardware, Software and other equipment, including ordering devices and totes, or pay to ABDC the replacement cost of such items that are not returned. Obligations in Provisions Paragraphs 4, 5.2, 6 and 9 and any provision the context of which shows the parties intended it to survive will remain in effect after the Term.

6. INDEMNIFICATION

Each party ("Indemnifying Party") will indemnify and defend the other, its employees and representatives ("Indemnified Party") against all claims and damages (including expenses and attorneys' fees) ("Claim") to the extent arising out of Indemnifying Party's obligations under this Agreement. Failure to give prompt written notice of a Claim will not relieve Indemnifying Party of liability except to the extent caused by such failure. Indemnifying Party will defend a Claim with counsel reasonably satisfactory to Indemnified Party and Indemnified Party will cooperate fully in such defense.

7. CUSTOMER'S INSURANCE

Customer will maintain sufficient insurance to cover all unpaid inventory in its possession. Customer will maintain professional liability insurance with limits of no less than $2,000,000 per incident and $10,000,000 aggregate. ABDC will be named on such policies as an additional insured. ABDC may reasonably increase such required limits from time to time.

8. SOFTWARE LICENSE

8.1   License. ABDC grants Customer a non-exclusive, nontransferable and revocable license to use software and related documentation ABDC provides for use in the Program ("Software"). Customer may not make, or allow others to make, copies except one backup copy. Customer must include all proprietary notices in permitted copies. Customer may not modify Software or create derivative works and may not translate, reverse engineer, disassemble or decompile Software.

8.2   Limited Warranty. ABDC warrants that, for ninety (90) days from the Effective Date, (i) Software will perform substantially in accordance with its documentation if operated as directed and (ii) hardware provided by ABDC and diskettes, CD-ROMs or other media on which the Software is provided will be free from defects under normal use. ABDC DISCLAIMS ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING THOSE OF MERCHANTABILITY, NON-INFRINGEMENT AND FITNESS FOR A PARTICULAR PURPOSE, FOR HARDWARE AND SOFTWARE, AND ACCURACY OF ANY DATA. ALL DATA IS PROVIDED "AS IS." DUE TO THE NATURE OF SOFTWARE, HARDWARE AND DATA, ERRORS AND INTERRUPTIONS MAY OCCUR AND CUSTOMER HAS ALL RISKS FOR QUALITY AND PERFORMANCE. No oral or written information provided by ABDC, its employees or other representatives will create any warranty.

8.3   Remedy. ABDC's liability and Customer's exclusive remedy for breach of warranties in Paragraph 8.2 will be, at ABDC's option, to (i) repair or replace Software or hardware so it performs substantially in accordance with its documentation; (ii) advise Customer how to achieve substantially the same functionality using different procedures, or (iii) replace defective media returned within ninety (90) days of the Effective Date. Such replacement will not extend such ninety (90) day period.

9. MISCELLANEOUS

9.1   Force Majeure. If ABDC's performance is prevented or delayed by labor disputes, fire, terrorism, acts of God or any other cause beyond its control, including unavailability of Products, transportation, materials or fuel, delays by suppliers, loss of facilities, Internet, telecommunication or electrical system failures or interruptions, voluntary foregoing a right in order to comply with or accommodate government orders or requests, compliance with any law or any other cause beyond its control ("Force Majeure"), ABDC may reduce or eliminate Products without liability or obligation during the Force Majeure period. In addition, if Force Majeure affects ABDC's cost of operations, ABDC may, at its discretion, add to the cost of Products its increased fuel costs, including taxes, and other costs associated with Product handling or operations, so long as Force Majeure affects its costs.

9.2   Security Interest. In addition to any security interest previously or hereafter provided by Customer to ABDC, Customer hereby grants to ABDC a security interest which may be a purchase money security interest in Products that Customer has not paid for and in Customer's or any third party's proceeds from Products until all amounts are paid. ABDC may do such things as are necessary to achieve the purposes of this Paragraph.

9.3   Assignment. This Agreement inures to the benefit of and is binding upon the heirs, successors and assigns of each party; provided, however that Customer may only assign its rights or delegate its duties under this Agreement, including by merger, change of control, asset sale, operation of law or otherwise, with ABDC's written consent; provided further that merger, change of control, asset sale, operation of law or otherwise shall not be construed to grant Customer

or its successor the right to terminate this Agreement. Customer hereby consents to ABDC's assigning part or all of its obligations to any affiliate and to assigning or granting a security interest in this Agreement in connection with any financing or securitization by ABDC or any affiliate.

9.4    Legal Requirements. ABDC warrants it does not and will not discriminate against any employee or applicant for employment because of race, creed, color, national origin, religion, gender, sexual preference, veteran status, handicap or as otherwise may be prohibited by law and will meet affirmative action obligations as are imposed by law. ABDC agrees to comply with the provisions of 29 CFR Part 470.

9.5    Miscellaneous. The successful party in any legal action, including in a Bankruptcy proceeding, may recover all costs, including reasonable attorneys' fees. Pennsylvania law will govern this Agreement without reference to conflict of l aws p rovisions. Any w aiver or del ay in enf orcing this Agreement will not deprive a party of the right to act at another time or due to another breach. All provisions are severable.    In the event of a conflict between a prior document between the parties and this Agreement, this Agreement will control. T his Ag reement supersedes prior oral or written representations by the parties that relate to its subject matter other than the security interest, which is in addition to and not in lieu of any security interest created in other agreements. Captions are intended for convenience of reference only. The parties may not modify this Agreement other than by a subsequent writing signed by each party. This Agreement will be interpreted as if written jointly by the parties. The parties are independent contractors.

EXHIBIT 4 TO
PRIME VENDOR AGREEMENT

ORLANDO DIVISION RETURNS POLICIES AND PROCEDURES

**Steps to Process a Return in a Pedigree Environment**

1) Separate product based on Rx, controlled substances, case items, refrigerated, etc.

2) Enter a reference number in the PO number field. This will represent the tote or box that the return will be sent back to AmerisourceBergen.

3) Ensure that an invoice number can be associated with all Rx items returned using the AmerisourceBergen supplied price sticker.

4) Enter the item number, quantity to be returned, return code / special handling code, and invoice number for every item to be returned.

5) You will receive a Return Authorization form for all items eligible for return. Return Authorization forms for product will print the item and invoice number. This list for each item will consist of the Quantity Available to Return, the Lot number and Expiration date.

6) You must certify all products by writing the quantity being returned next to the appropriate RTN number, lot number and expiration date. Please be sure that this information is accurate. Print and sign your name, then date the Pharmacist Product Certification Statement at the end of the form. Items with discrepancies will not receive credit, and will be returned to you.

7) Print and sign your name on the last line of the Return Authorization which confirms product has been stored and managed in compliance with PDMA guidelines. The driver picking up the return must sign the Return Authorization at time of pickup.

8) After all signatures have been applied to the Return Authorization document, place the top copy of the Return Authorization in the tote or case and retain the second copy for your records. Also secure totes with ties.

9) Any missing signatures or failure to follow the above procedures will result in returning the Return Authorization and product back to your facility. AmerisourceBergen will not be responsible for missing or damaged returned product.

**Returns**

Returns will be processed according to the new procedures that were communicated for salable product prior to June 22, 2006. This procedure helps ensure the safety and integrity of product that is returned to our inventory. Invoice numbers must be transmitted with return requests for salable products and Return Authorization forms must be completed according to the rules that have been communicated in previous correspondence. Please contact us if you need a copy of this documentation.

## Drop Shipments

AmerisourceBergen will be able to process drop shipments through the Customer Service department in our Orlando distribution center. <u>Please note that any drop shipments that you expect AmerisourceBergen to process invoicing for must be ordered through Customer Service.</u> AmerisourceBergen can process drop shipments for manufacturers that provide the required information and the lot number to you on a document that you receive with the drop ship product. Your company must retain the document that the manufacturer provides for three years according to Florida statutes. AmerisourceBergen has communicated with drop ship manufacturers explaining the requirements of the new legislation and is working to identify those suppliers that can comply with this legislation. AmerisourceBergen cannot facilitate drop shipments for those manufacturers that are unable to comply with the requirements.

## Out of State Wholesalers Optional Requirements

In an effort to remain in compliance with State and Federal regulations, AmerisourceBergen has set forth the following operational requirements for out-of-state wholesalers:

## Cut-Off Time

- The cut-off time for all orders will be 2:00PM Eastern, Sunday through Thursday.

## Freight

- Orders are limited to Rx only
- Freight is to be paid by the customer. The customer must supply Fed-Ex/UPS account numbers and/or LTL courier account numbers. Customer utilizing a LTL service and "Next Day" service must have a separate ABC customer number for each account.
- Refrigeration product must be ordered on the "Next Day" account.
- Next Day/Ground orders placed on Sunday will ship on Monday.
- Once the shipment leaves our dock any shortages and/or damages are the sole responsibility of the customer and its courier service.
  - o Insurance coverage is optional and paid by customer.

## Returns

- All returns must be initiated within 7 days of delivery.
- Returned product is paid by the customer with the exception of a picking error.
- Product must be returned within a two week period after receipt of RA.

EXHIBIT "B"

# Assignment Agreement

This Assignment Agreement ("Assignment") is entered into as of March 9, 2009 ("Effective Date") among AmerisourceBergen Drug Corporation, a Delaware corporation ("ABDC"), A-S Medication Solutions LLC, a Nebraska limited liability company ("ASMS")and Allscripts, LLC, a Delaware limited liability company ("Allscripts").

A.   ABDC and Allscripts are currently parties to a Prime Vendor Agreement with an Effective Date of September 1, 2007 and an initial term continuing through August 31, 2010 ("PVA"). Under the PVA, Allscripts purchases from ABDC various brand name and generic prescription pharmaceutical products, as well as certain other products and services, in furtherance of Allscripts' prepackaged medications fulfillment solutions business ("Business").

B.   On or about March 10, 2009, ASMS is scheduled to acquire certain assets and take assignment of certain liabilities of Allscripts which constitute the Business ("Acquisition"), and therefore ASMS wishes to take assignment of the PVA from Allscripts.

C.   Section 9.3 of Exhibit 3 to the PVA provides that Allscripts may only assign its rights and delegate its duties under the PVA with the written consent of ABDC.

D.   An affiliate of ASMS is currently party to an agreement ("Competing Agreement") with a competitor of ABDC ("Competitor") under which such affiliate purchases a range of products and services substantially equivalent to those provided by ABDC to the Business under the PVA.

NOW THEREFORE, the parties agree as follows.

1.   As of the date of the closing of the Acquisition, ABDC consents to Allscripts' assignment of all of its obligations and delegation of all of its duties under the PVA to ASMS, and ASMS agrees to accept such assignment and delegation.

2.   ASMS covenants and agrees that:

A.   During the term of the PVA, the volume of products historically purchased by Allscripts from ABDC and resold in support of the Business will, in the aggregate, be transferred so as to remove a material volume of historic purchases from coverage under the PVA.

B.   If ASMS or its affiliates transfer volume of products they historically purchased from another source, including under the Competing Agreement, to Allscripts under the PVA, doing so will not breach any obligations to a third party.

3.   ABDC and ASMS will work collaboratively to develop, assess and, if they agree, implement an arrangement under which ASMS and its affiliates will purchase products and services from ABDC; provided, however, this Assignment will impose on neither party an enforceable obligation to negotiate towards any agreement or commitment and such agreement, if any, must be acceptable to each party in its sole discretion.

4.    In all other respects, the PVA remains in effect according to its terms.

IN WITNESS WHEREOF, the parties have had a duly authorized officer, partner or principal execute this Assignment Agreement as of its Effective Date.

AmerisourceBergen Drug Corporation

By: _____
Name:  Steve Iampietro
Title:  VP, Strategic Accounts

Allscripts, LLC

By: _____
Name:  Lee Shapiro
Title:  President and Chief Operating Officer

A-S Medication Solutions LLC

By: _____
Name:  Walter Hoff
Title:  Chief Executive Officer

SMJ/Allscripts Sav-Rx ABDC Assignment
3/8/09

4.   In all other respects, the PVA remains in effect according to its terms.

IN WITNESS WHEREOF, the parties have had a duly authorized officer, partner or principal execute this Assignment Agreement as of its Effective Date.

AmerisourceBergen Drug Corporation

By: _____
Name:  Steve Iampietro
Title:  VP, Strategic Accounts

Allscripts, LLC

By: _____
Name: _____
Title: _____

A-S Medication Solutions LLC

By: _____
Name:  Walter Hoff
Title:  Chief Executive Officer

SMI/Allscripts Sav-Rx ABDC Assignment
3/8/09

4.      In all other respects, the PVA remains in effect according to its terms.

IN WITNESS WHEREOF, the parties have had a duly authorized officer, partner or principal execute this Assignment Agreement as of its Effective Date.

AmerisourceBergen Drug Corporation

By: _____
Name: Steve Iampietro
Title: VP, Strategic Accounts


Allscripts, LLC


By: _____

Name: _____

Title: _____


A-S Medication Solutions LLC

By: _____
Name: Walter Hoff
Title: Chief Executive Officer

SMJ/Allscrips Sav-Rx ABDC Assignment
3/8/09